## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROGER L. DENNIS, | : | |
| a/k/a Abdul a.m. Shakur, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : Civ. No. 21-655-GBW | |
| | : | |
| DR. TIM BOULOS,  et al., | : | |
| | : | |
| Defendants. | : | |

---

Roger L. Dennis, Plummer Community Corrections Center, Wilmington, Delaware.  Pro Se Plaintiff.

## MEMORANDUM OPINION

July 12, 2023
Wilmington, Delaware

**Williams, U.S. District Judge:**

## I.     INTRODUCTION

On May 5, 2021, Plaintiff Roger L. Dennis, then an inmate at Howard R.

Young Correctional Institution ("HRYCI") in Wilmington, Delaware, filed this

action pursuant to 42 U.S.C. § 1983.  (D.I. 2).[1]  Plaintiff appears *pro se* and has

been granted leave to proceed *in forma pauperis*.  (D.I. 4, 7).  In June 2022, the

original Complaint was dismissed and Plaintiff was given leave to amend.  (D.I.

12, 13).  Plaintiff later filed an Amended Complaint.  (D.I. 23).  Plaintiff has also

requested appointed counsel.  (*Id.*; D.I. 21).  The Court proceeds to screen the

pleadings pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a).

## II.    BACKGROUND

Plaintiff's allegations in the Original Complaint, to the best the Court can

understand them, are assumed to be true for screening purposes.  *See Shorter v.*

*United States*, 12 F.4th 366, 374 (3d Cir. 2021).  Plaintiff alleges that the New

Castle County Police Department searched his "girlfriend's place" and arrested

Plaintiff in violation of his Fourth Amendment rights; he was subjected to cruel

and unusual punishment in violation of the Eighth Amendment when he was

housed at HRYCI; excessive force was used against him in the infirmary at

---

[1] In January 2023, Plaintiff was transferred to Plummer Community Corrections
Center in Wilmington.  (D.I. 21, 23).

HRYCI; Defendant Dr. Tim Boulos performed a nerve damage surgery that

resulted in Plaintiff suffering from seizures; Plaintiff tested positive for COVID-19

in December 2020 and January 2021, and HRYCI staff did nothing about it;

Plaintiff was retaliated against by being "booked" when he filed a statement under

the Prison Rape Elimination Act ("PREA"); and the Delaware Department of

Correction ("the DDOC") did not respond to his grievances.  Plaintiff seeks

compensatory damages.

On June 13, 2022, the Court screened and dismissed the Complaint without

prejudice for failure to exhaust administrative remedies, concluding that Plaintiff

had conceded that the grievance process was not complete when he filed his

Complaint.  (D.I. 12, 13).  Plaintiff was given leave to file an amended complaint

on or before July 15, 2022, on any claims that have been administratively

exhausted.  (D.I. 13).

On July 29, 2022, the Court directed the Clerk to close the case because

Plaintiff had failed to timely file an amended complaint.  (D.I. 16).  On August 8,

2022, Plaintiff filed a motion to reopen.  (D.I. 17).

On August 1, 2022, the Court received a filing from Plaintiff which was

dated July 28, 2022 (*i.e.*, the day before the July 29, 2022 Order closing this case),

and contained some overlapping allegations from this case, but was docketed as the

2

opening complaint in a new case. *See Dennis v. Boulos*, No. 22-1025-GBW (D. Del.), D.I. 1. Plaintiff later filed another document in No. 22-1025 (*i.e.*, the new case), containing more overlapping allegations from this case. *See id.*, D.I. 9. In December 2022, the Court screened the complaint in No. 22-1025 and dismissed it on the merits. (D.I. 10, 11). Plaintiff was given leave to file an amended complaint in No. 22-1025, and he did so on March 8, 2023. *Id.*, D.I. 15. Plaintiff's amended complaint in No. 22-1025 has not yet been screened.

In this case, Plaintiff has filed a one-paragraph "Amended Complaint," stating that he felt "that the complaint is well in means and that they should responsible for what they did." (D.I. 23). He requested that the Court investigate the case. (*Id.*). He did not address exhaustion of administrative remedies.

## III.   LEGAL STANDARDS

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013) (quotation marks omitted); *see also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (civil actions filed by prisoners seeking redress from governmental entities or government

officers and employees).  The Court must accept all factual allegations in a

complaint as true and take them in the light most favorable to a pro se plaintiff.

*See Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).  Because

Plaintiff proceeds *pro se*, his pleading is liberally construed and his Complaint,

"however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

A complaint is not automatically frivolous because it fails to state a claim.  *See*

*Dooley v. Wetzel*, 957 F.3d. 366, 374 (3d Cir. 2020).   Rather, a claim is deemed

frivolous only where it relies on an "'indisputably meritless legal theory' or a

'clearly baseless' or 'fantastic or delusional' factual scenario.'" *Id.*

The legal standard for dismissing a complaint for failure to state a claim

pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard

used when ruling on Rule 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d

236, 240 (3d Cir. 1999).  However, before dismissing a complaint or claims for

failure to state a claim upon which relief may be granted pursuant to the screening

provisions of 28 U.S.C. §§ 1915 and 1915A, the Court must grant Plaintiff leave to

amend his complaint unless amendment would be inequitable or futile.  *See*

*Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam). A complaint may not be dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 11.

A court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

A defendant in a civil rights action "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved";

5

personal involvement in the alleged wrong is required. *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007); *see also Polk County v. Dodson*, 454 U.S. 312, 325 (1981) (holding that liability in a § 1983 action must be based on personal involvement, not respondeat superior). Such involvement may be "shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). "Allegations of participation and acquiescence . . . must be made with appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016).

With the exception of Defendant Burns, the Complaint contains no allegations directed at any of the Defendants that are pleaded with particularity. Plaintiff's blanket statement about all of Defendants' alleged conduct is insufficient to constitute allegations of personal involvement for purposes of a § 1983 claim. Accordingly, these Defendants will be dismissed from this action for failure to state a claim, pursuant 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). The dismissals will be without prejudice. *See O'Dell v. United States Gov't*, 256 F. App'x 444, 445 (3d Cir. 2007) (unpublished) (leave to amend is proper where the plaintiff's claims do not appear "patently meritless and beyond all hope of redemption").

6

## IV.   DISCUSSION

## 1.   Exhaustion

Under the Prison Litigation Reform Act of 1996, a prisoner must pursue all available avenues for relief through the prison's grievance system before bringing a federal civil rights action.  *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues.").  Section 1997(e) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of the Revised Statutes of the United States, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997(e).  The exhaustion requirement is mandatory.  *See Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *Booth*, 532 U.S. at 742 (holding that exhaustion requirement of PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures").  The  limitations period for filing a § 1983 action is tolled during the period that a prisoner spends exhausting his administrative remedies.  *See Jones v. Unknown D.O.C. Bus Driver & Transportation Crew*, 944 F.3d 478, 480 (3d Cir. 2019).

There is no futility exception to § 1997e's exhaustion requirement. *See Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000). An inmate must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. *See Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004); *see also Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006) ("[T]here appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court."). Courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. *See e.g., Booth v. Churner*, 206 F.3d 289 (3d Cir. 2000); *Bolla v. Strickland*, 304 F. App'x 22 (3d Cir. 2008).

If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. *See Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000). In addition, an inmate's failure to exhaust will be excused "under certain limited circumstances," *Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005), so an inmate can defeat a claim of failure to exhaust by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate," *Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2002); *see*

*also Ross v Blake*, 578 U.S. 632, 642-44 (2016) (administrative procedure is not available when it operates as simple dead end, it is so opaque that it becomes incapable of use, and when prison administrators thwart inmates from taking advantage of grievance process through machination, misinterpretation, or intimidation.).  Also, "administrative remedies are not 'available' under the PLRA where a prison official inhibits an inmate from resorting to them through serious threats of retaliation and bodily harm."  *Rinaldi v. United States*, 904 F.3d 257, 267 (3d Cir. 2018).

 While exhaustion is an affirmative defense, the Court may *sua sponte* dismiss an action pursuant to § 1915A when the failure to exhaust defense is obvious from the face of the complaint.  *See Caiby v. Haidle*, 785 F. App'x 64, 65 (3d Cir. 2019).

 The Court now reconsiders its *sua sponte* dismissal of the original Complaint for failure to exhaust administrative remedies.  In the original Complaint, filed on a Court form, Plaintiff alleged that the DDOC "did not respond to any of [his] grievances." (D.I. 2 at 5).  In the section of the form addressing exhaustion, Plaintiff checked a box indicating that he had completed the administrative process, but in the space reserved for providing a reason the administrative process had not been completed, Plaintiff wrote, "they never

responded to grievances." (*Id.* at 9). Plaintiff also wrote in the Complaint that he exhausted "some issues, but others [he] knew they would not do anything about or address." (*Id.*).

Upon reconsideration, it is arguably clear from the face of the Complaint that Plaintiff did not exhaust his administrative remedies as to *some* claims, given his apparent indication that he exhausted some issues but did not try to exhaust issues for which he deemed filing grievances futile. *See Nyhuis*, 204 F.3d at 71 (noting that "the futility exception . . . is not applicable in any case"). It is not obvious, however, that all of Plaintiff's claims were unexhausted, given that he checked a box indicating that he had completed the administrative process, he stated that he had exhausted some issues, and he alleged that DDOC officials did not address "any" of his grievances. *See Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019) (holding that "as soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement"). It may well be the case that some of Plaintiff's claims will be subject to dismissal for failure to exhaust administrative remedies if Defendants successfully raise that affirmative defense, but the Court cannot conclude that such a result is so obvious from the face of the

10

Complaint as to permit *sua sponte* dismissal.  Accordingly, the Court will vacate its June 13, 2022 Memorandum Opinion and Order, and will herein screen the Original complaint on the merits.

## 2.    Merits

### A.    Eleventh Amendment Immunity

The Eleventh Amendment of the United States Constitution protects an unconsenting state or state agency from a suit brought in federal court by one of its own citizens, regardless of the relief sought.  *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984); *Edelman v. Jordan*, 415 U.S. 651 (1974).  The DDOC is an agency of the State of Delaware, and HRYCI falls under the umbrella of the DDOC.  They are both therefore entitled to immunity under the Eleventh Amendment.  *See e.g.*, *Evans v. Ford*, 2004 WL 2009362, *4 (D. Del. Aug. 25, 2004) (dismissing claim against the DDOC, because the DDOC is state agency and did not waive Eleventh Amendment immunity).

The DDOC and HRYCI are immune from suit and, therefore, they will be dismissed.  Amendment is futile as to these claims.

### B.    Municipal Liability

11

Plaintiff sues Defendant New Castle County Police Department in relation to the search of his girlfriend's home and Plaintiff's arrest. A municipality may only be held liable under § 1983 when the "execution of a government's policy or custom . . . inflicts the injury." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990).

While a government policy is established by a "decisionmaker possessing final authority," a custom arises from a "course of conduct. . . so permanent and well settled as to virtually constitute law." *Andrews*, 895 F.2d at 1480 (citing *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978)). Accordingly, a plaintiff seeking to recover from a municipality must (1) identify an allegedly unconstitutional policy or custom, (2) demonstrate that the municipality, through its deliberate and culpable conduct, was the "moving force" behind the injury alleged; and (3) demonstrate a direct causal link between the municipal action and the alleged deprivation of federal rights. *Board of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

The claim against the New Castle County Police Department is pled in a conclusory manner without supporting facts. Indeed, Plaintiff has not pled that the County was the "moving force" behind any alleged constitutional violation. Absent any allegation that a custom or policy established by the County directly

12

caused harm to Plaintiff, the claim cannot stand and will be dismissed. Plaintiff will be given leave to amend this claim.

### C.    State Actor

Plaintiff brings a claim against his former public defender, John Edinger. In *Polk County v. Dodson*, 454 U.S. 312, 314 (1981), the Supreme Court held that a public defender, although paid and ultimately supervised by the state, does not act under color of state law under 42 U.S.C. § 1983. A public defender, therefore, is not liable under § 1983 when performing a lawyer's traditional functions. *Stankowski v. Farley*, 251 F. App'x 743, 747 (3d Cir. 2007). Edinger is not liable under § 1983 for the misconduct alleged and will be dismissed as a defendant. Amendment is futile as to the claim against Edinger.

### D.    Claims Against Individual Defendants

Plaintiff otherwise fails to state claims against individual Defendants. At most, Plaintiff's allegations against Dr. Tim Boulos amount to negligence, which this does not rise to the level of a constitutional violation. *See Daniels v. Williams*, 474 U.S. 327, 330-30 (1986). Plaintiff will be given leave to amend this claim.

Liability in a 42 U.S.C. § 1983 action is personal in nature and, to be liable, a defendant must have been personally involved in the wrongful conduct. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1208 (3d Cir. 1988). Allegations of

13

personal involvement must also be sufficiently pled to suggest a plausible claim for relief. *See Iqbal*, 556 U.S. at 678.

To the extent Plaintiff has named Warden Akinbayo based upon his supervisory positions, there is no respondeat superior liability under § 1983. *See Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016). A defendant in a civil rights action "cannot be held responsible for a constitutional violation which he [ ] neither participated in nor approved"; personal involvement in the alleged wrong is required. *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007); *see also Dodson*, 454 U.S. at 325 (liability in a § 1983 action must be based on personal involvement, not respondeat superior). Such involvement may be "shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

Here, there are no allegations of personal involvement, personal direction or actual knowledge and acquiescence of an alleged constitutional violation on the part of Warden Akinbayo. Plaintiff merely alleges that Warden Akinbayo was "in charge of everything" and did not respond to a letter Plaintiff sent him after he was out of the infirmary. This is not sufficient to establish personal liability and the claims against Warden Akinbayo will be dismissed. Plaintiff will be given leave to amend this claim.

14

Plaintiff fails to state a retaliation claim against Defendant Liplott because his allegations lack the specificity required by the pleading standard. It is unclear to the Court what claims Plaintiff is attempting to bring against Defendants DeMatteis, Walden, Parkes, Cubete, Belenger, Gibson, and he has therefore failed to state a claim these Defendants. Plaintiff will be given leave to amend these claims, and his claim against Defendant Liplott.

Plaintiff did, however, state excessive-force claims against Defendants Dunn and Cannon, by alleging that Dunn sprayed mace in his face and kicked him hard enough to break his ribs, and that Cannon also sprayed him in the face with mace and punched him hard enough to split his lip.

3.   **No. 22-1025**

The Court concludes that No. 22-1025 was opened by administrative error. The filing that was docketed as the original complaint in that case appears to have been Plaintiff's attempt to file an amended complaint in this case. Accordingly, the Court will issue a Memorandum Opinion and Order today dismissing No. 22-1025 as duplicative of this case. The full filing fee has been satisfied in No. 22-1025, but it has not been satisfied in this case. The Court will therefore direct the payments from No. 22-1025 to be used to satisfy the filing fee in this case, and the remaining balance to be refunded to Plaintiff.

### 4.    Requests for Appointed Counsel

Plaintiff has requested appointed counsel. (D.I. 21, 23). A *pro se* litigant proceeding *in forma pauperis* has no constitutional or statutory right to representation by counsel. *See Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). However, representation by counsel may be appropriate under certain circumstances, after a finding that a plaintiff's claim has arguable merit in fact and law. *Tabron*, 6 F.3d at 155.

After passing this threshold inquiry, courts should consider a number of factors when assessing a request for counsel. Factors to be considered by a court in deciding whether to request a lawyer to represent an indigent plaintiff include: (1) the merits of the plaintiff's claim; (2) the plaintiff's ability to present his or her case considering his or her education, literacy, experience, and the restraints placed upon him or her by incarceration; (3) the complexity of the legal issues; (4) the degree to which factual investigation is required and the plaintiff's ability to pursue such investigation; (5) the plaintiff's capacity to retain counsel on his or her own behalf; and (6) the degree to which the case turns on credibility determinations or expert testimony. *See Montgomery v. Pinchak*, 294 F.3d 492, 498-99 (3d Cir. 2002); *Tabron*, 6 F.3d at 155-56. The list is not exhaustive, nor is any one factor determinative. *Tabron*, 6 F.3d at 157.

Assuming, solely for the purpose of deciding this motion, that some of Plaintiff's claims have merit in fact and law, several of the *Tabron* factors militate against granting his request for counsel at this time. The case is in its early stages still and is not complex, and Plaintiff appears to have the ability to present his claims.

## V.    CONCLUSION

For the above reasons, the Court will: (1) vacate its June 13, 2022 Memorandum Opinion and Order (D.I. 12, 13); (2) allow Plaintiff to proceed on his excessive-force claims from the original Complaint against Defendants Dunn and Cannon; (3) dismiss the claims against the DDOC and HRYCI with prejudice; (4) dismiss the claim against the New Castle County Police Department without prejudice; (5) dismiss the claim against Defendant Edinger with prejudice; (6) dismiss the remainder of the claims without prejudice; and (7) deny Plaintiff's requests for appointed counsel without prejudice to renew. Plaintiff will be given leave to file a second amended complaint

An appropriate Order will be entered.